Zvi "Hershy" Silver, SBN 234855
hsilver@silverlawfirm.com
**SILVER LAW FIRM, APC**
444 West "C" Street, Suite 405
San Diego, CA 92101
Tel:  (619) 231-1600
Fax: (619) 231-1616

Attorneys for Defendants
     Terrafusion, Inc., and MCC Partners NY LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ROTSTEIN, an individual, and TERRAFUSION INTERNATIONAL, INC.<br><br>          Plaintiffs,<br><br>v.<br><br>TERRAFUSION, INC.; and DOES 1-10, inclusive,<br><br>          Defendants. | Court File No. 3:1513-cv-02993-RS<br><br>DEFENDANTS TERRAFUSION, INC AND MCC PARTNERS NY LLC'S ANSWER AND COUNTERCLAIM<br><br><br>Case assigned to the Hon. Richard Seeborg |

## I.    ANSWER

    Defendant MCC Partners NY LLC ("MCCP")—named in the Second Amended Complaint as Doe 1; though wrongly named as "MCCP, Inc."—and Defendant Terrafusion, Inc. ("TI" and collectively "Defendants"), by and through its undersigned counsel files the following Answer to the Second Amended Complaint of Plaintiffs Edward Rotstein ("Rotstein") and Terrafusion International, Inc. ("TII", and collectively "Plaintiffs") and Counterclaims against Plaintiffs as follows:

    1.    In Response to Paragraph 1, admit.

    2.    In Response to Paragraph 2, admit.

3.      In Response to Paragraph 3, admit that TI is a corporation incorporated under the law of the State of Delaware; deny the remainder of the paragraph.

4.      In Response to Paragraph 4, admit.

5.      In Response to Paragraph 5, Defendants lack sufficient knowledge or information to form a belief as to the allegations contained therein and based thereon deny same.

6.      In Response to Paragraph 6, this is a statement relating to the format of the complaint; thus no response is required.

7.      In Response to Paragraph 7, Defendants admit that venue is proper in county of San Francisco; all questions of law are referred to the Court;

8.      In response to Paragraph 8, Defendants reallege and incorporate their responses to the previous Paragraphs.

9.      In Response to Paragraph 9, admit.

10.      In Response to Paragraph 10, the Agreement speaks for itself; all questions of law are referred to the Court.

11.      In Response to Paragraph 11, the Agreement speaks for itself; all questions of law are referred to the Court.

12.      In Response to Paragraph 12, the Agreement speaks for itself; all questions of law are referred to the Court.

13.      In Response to Paragraph 13, deny.

14.      In Response to Paragraph 14, deny.

15.      In Response to Paragraph 15, the Agreement speaks for itself; all questions of law are referred to the Court; as to any remaining allegations, deny.

16.      In Response to Paragraph 16, the Agreement speaks for itself; all questions of law are referred to the Court; as to any remaining allegations, deny.

17.      In Response to Paragraph 17, the Agreement speaks for itself; all questions of law are referred to the Court; as to any remaining allegations, deny.

18.      In Response to Paragraph 18, the Agreement speaks for itself; all questions of law are referred to the Court; on January 19, 2012, Mr. Creek did propose  revised

terms because Plaintiffs repeatedly did not and refused to provide the purchase price as provided in the Agreement; as to any remaining allegations, deny.

19. In Response to Paragraph 19, the Agreement speaks for itself; all questions of law are referred to the Court; Defendants further admit that Defendants terminated agreement as a result of Plaintiffs' repeated breaches and refusal to pay the purchase price for the business; as to any remaining allegations, deny.

20. In Response to Paragraph 20, Defendants admit that Plaintiffs did pay some money to TI; as to any remaining allegations, deny.

21. In Response to Paragraph 21, at this time, Defendants lack sufficient knowledge or information to form a belief as to the allegations contained therein and based thereon deny same.

22. In Response to Paragraph 22, admit.

23. In Response to Paragraph 23, deny.

24. In Response to Paragraph 24, the Agreement speaks for itself; all questions of law are referred to the Court; as to any remaining allegations, deny.

25. In Response to Paragraph 25, the Agreement speaks for itself; all questions of law are referred to the Court; as to any remaining allegations, deny.

26. In Response to Paragraph 26, Defendants admit that no money was returned to Plaintiffs; as to any remaining allegations, deny.

27. In Response to Paragraph 27, deny.

28. In Response to Paragraph 28, deny.

29. In Response to Paragraph 29, deny.

30. In response to Paragraph 30, Defendants reallege and incorporate their responses to the previous Paragraphs.

31. In response to Paragraph 31, Defendants admit that there were discussions between TI and MCCP, as to any remaining allegations, deny.

32. In Response to Paragraph 32, the Agreement speaks for itself; all questions of law are referred to the Court; on or about January 17, 2012, TI's board of directors agreed that if Plaintiffs did not purchase the assets as proposed in the Asset Purchase

Agreement or on other terms that were acceptable to the board, TI would terminate the APA with Plaintiffs; as to any remaining allegations, deny.

33.   In Response to Paragraph 33, deny.

34.   In Response to Paragraph 34, deny.

35.   In Response to Paragraph 35, deny.

36.   In response to Paragraph 36, Defendants reallege and incorporate their responses to the previous Paragraphs.

37.   In Response to Paragraph 37, the Agreement speaks for itself; all questions of law are referred to the Court.

38.   In Response to Paragraph 35, deny.

39.   In Response to Paragraph 39, deny.

40.   In Response to Paragraph 40, Defendants admit that TI refuses to convey the assets of TI, because of Plaintiffs' repeated and continuous breaches of the APA; as to any remaining allegations, deny.

41.   In Response to Paragraph 41, all questions of law are referred to the Court; additionally, Defendants lack sufficient knowledge or information to form a belief as to the allegations contained therein and based thereon deny same.

42.   In Response to Paragraph 42, the Agreement speaks for itself; all questions of law are referred to the Court; as to any remaining allegations, deny.

43.   In Response to Paragraph 43, deny.

44.   In response to Paragraph 44, Defendants reallege and incorporates its responses to the previous Paragraphs.

45.   In Response to Paragraph 45, the Agreement speaks for itself; all questions of law are referred to the Court; as to any remaining allegations, deny.

46.   In Response to Paragraph 46, admit.

47.   In Response to Paragraph 47, the Agreement speaks for itself; all questions of law are referred to the Court; as to any remaining allegations, Defendants lack sufficient knowledge or information to form a belief as to the allegations contained therein and based thereon deny same.

48.     In Response to Paragraph 48, the Agreement speaks for itself; all questions of law are referred to the Court; as to any remaining allegations, Defendants lack sufficient knowledge or information to form a belief as to the allegations contained therein and based thereon deny same.

49.     In Response to Paragraph 49, the Agreement speaks for itself; all questions of law are referred to the Court; as to any remaining allegations, Defendants lack sufficient knowledge or information to form a belief as to the allegations contained therein and based thereon deny same.

50.     In Response to Paragraph 50, deny.

51.     In response to Paragraph 51, Defendants reallege and incorporate their responses to the previous Paragraphs.

52.     In Response to Paragraph 52, Defendants admit that Plaintiffs did pay some money to TI; as to any remaining allegations, Defendants lack sufficient knowledge or information to form a belief as to the allegations contained therein and based thereon deny same.

53.     In Response to Paragraph 53, all questions of law are referred to the Court; as to any remaining allegations, deny.

54.     In response to Paragraph 54, Defendants reallege and incorporates its responses to the previous Paragraphs.

55.     In Response to Paragraph 55, deny.

56.     In Response to Paragraph 55, deny.

57.     In Response to Paragraph 57, deny.

58.     In Response to Paragraph 58, deny.

59.     In Response to Paragraph 59, deny.

60.     In Response to Paragraph 60, deny.

61.     In response to Paragraph 61, Defendants reallege and incorporate their responses to the previous Paragraphs.

62.     In Response to Paragraph 62, Defendants admit that no money was returned to Plaintiffs; all questions of law are referred to the Court; as to any remaining allegations, deny.

63.     In Response to Paragraph 63, Defendants admit that TI sold the TI Assets to MCCP (see paragraphs 113-115); said agreement speaks for itself; all questions of law are referred to the Court.

64.     In Response to Paragraph 64, deny.

65.     In Response to Paragraph 65, deny.

66.     In Response to Paragraph 66, deny.

67.     In Response to Paragraph 67, deny.

## II.   AFFIRMATIVE DEFENSES

### DEFENSES

68.     Plaintiffs' SAC fails to state facts sufficient to constitute any cause of action upon which relief can be granted.

69.     Plaintiffs' SAC is barred by the doctrine of unclean hands.

70.     Plaintiffs' SAC is subject to the Plaintiffs' Complaint.

71.     Plaintiffs' SAC is barred by their breach of the agreement.

72.     Plaintiffs' SAC is barred by their own wrongdoing.

73.     Plaintiffs' SAC is barred, in whole or in part, by the fact that Plaintiff s fully performed their obligations under the agreement.

74.     Plaintiffs have suffered no damage as a result of any acts or omissions of the Plaintiff.

75.     Defendants are informed and believe and there-upon allege that any and all injuries or damages, if any, sustained by Plaintiffs resulted from the failure of the Plaintiffs to mitigate its damages, thus barring recovery herein.

76.     Plaintiffs' SAC is barred is barred by the doctrine of estoppel.

77.     Defendants are informed and believe, and thereupon allege that if any contract, obligations or amendments have been entered into, any duty or performance of Defendants is excused by reason of failure of consideration, waiver, breach of condition

precedent, impossibility of performance, prevention by Complainant, frustration of purpose, and/or acceptance by Plaintiffs.

78.     Defendants are informed and believe and thereupon allege that to the extent that Plaintiffs allege breach, default or failure to perform on the part of Defendant TI under any agreement between the parties, or otherwise, the fact of which is expressly denied, then such breach, default, or failure to perform was legally excused and discharged for reasons including, but not limited to, the material breach, default, or failure to perform on the part of Plaintiffs under such agreement, or otherwise.

79.     Defendants are informed and believe and thereupon allege that to the extent that Plaintiffs allege breach, default or failure to perform on the part of Defendant TI under any agreement between the parties, or otherwise, the fact of which is expressly denied, then such breach, default, or failure to perform was legally excused and justified as an anticipatory breach to Plaintiffs' actions.

80.     Defendants are informed and believe and thereupon allege that Plaintiffs' claim is totally or partially subject to set-off, equitable or legal in the amount to be proven at trial.

81.     Defendants are informed and believe and thereupon allege that provisions of the contract under which recovery is sought in this matter are adhesive, unconscionable and, accordingly, unenforceable.

82.     Defendants are informed and believe and thereupon allege that Plaintiffs' action against Defendants is barred by fraud or other willful misconduct.

83.     Defendants are informed and believe and thereupon allege that Defendants' actions respecting the subject matters in Plaintiffs' alleged causes of action, if proved, were undertaken in good faith, without malice, and constitute lawful, proper and justified means to further the purpose of engaging in and protecting the legitimate business interests of Defendants.  By reason of the foregoing, Plaintiffs are barred in whole or in part from recovering damages herein.

84.     Defendants currently have insufficient information upon which to form a belief as to whether it has additional affirmative defenses available.  Defendants therefore

reserve the right to assert additional affirmative defenses in the event that investigation and discovery indicate that doing so would be appropriate.

## III.   COUNTERCLAIM

### THE PARTIES

85.   Defendants are informed and believe, and on that basis allege, that Plaintiff Edward Rotstein is, and at all times mentioned herein was, an individual and resident of the County of King, State of Washington.

86.   Defendants are informed and believe, and on that basis allege, that Plaintiff TII is, and at all times mentioned herein was, a corporation incorporated under the laws of the State of Washington, with its principal place of business in the State of Washington.

87.   Defendant TI is, and at all times mentioned herein was, a duly organized and existing corporation incorporated under the laws of the State of Delaware, with its principal place of business in the County of New York, State of New York.

88.   Defendant MCC Partners NY LLC ("MCCP"), is a New York Limited Liability Company with its principal place of business in the County of Kings, State of New York.  All of the Members of the MCCP are citizens of the State of New York.

89.   MCCP was named/added as Doe 1 in the SAC.  MCCP was wrongly named as "MCCP, Inc." in the SAC.

90.   Upon information and belief, and at all times relevant hereto, Rotstein was the agent, representative, servant, principal, or managing agent—with authority to set corporate policy—of  TII and, in such capacity or capacities, with the express and/or implied authority, knowledge, permission and consent of TII participated in the acts and conduct alleged herein, or ratified such conduct, and incurred liability to Plaintiff on behalf of himself and TII.

91.   Defendants are informed and believe, and on that basis allege, that the fictitiously-named cross-defendants sued herein as Moes 1 through 10, and each of them, are in some manner responsible or legally liable for the actions, events, transactions, and circumstances alleged herein. The true names and capacities of such fictitiously-named cross-defendants, whether individual, corporate, or otherwise, are presently unknown to

Defendants, and Defendants will seek leave of Court to amend this Counterclaim to assert the true names and capacities of such fictitiously-named Plaintiffs when the same have been ascertained. For convenience, each referenced to a named Plaintiff herein shall also refer to Moes 1 through 10. All Plaintiffs, including both the named Plaintiffs and those referred herein as Moes 1 though 10, are sometimes collectively referred to herein as "Plaintiffs."

## JURISDICTION AND VENUE

92.     This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs because Plaintiffs are asking for general damages in the amount exceeding $320,000.00 and the declaratory relief sought by Plaintiffs from Defendants—i.e. declaring that certain assets currently owned by Defendants MCCP, which assets MCCP purchased in good faith from Defendant TI, is owned by Plaintiffs—is valued at more than the sum of $75,000, exclusive of interest and costs.  Additionally, Defendants, by way of this counterclaim, are seek damages for breach of contract, declaratory relief, and damages for infringement of trademark that with a value in excess of $300,000.

93.     This Court has jurisdiction to hear the subject matter of this Counterclaim as it arises out of the same transactions and occurrences alleged in the SAC. This Court also has jurisdiction over each Plaintiff, as some or all of the unlawful activities as alleged herein occurred in California.  Venue is proper in this Court because the Asset Purchase Agreement ("**APA**") subject to this lawsuit provides that all disputes arising under the contract will be resolved in the courts located in the county of San Francisco, State of California.

## GENERAL ALLEGATIONS RE: BREACH OF CONTRACT

94.     Defendants are the current owners and holders of the trademark for the mark of "TERRAFUSION". The trademark is registered under US serial number 77265827 and US Registration Number of 3426183.  A copy of the status of the mark is attached hereto

as Exhibit "1."  A true and correct copy of the mark is used and is attached hereto as "Exhibit "2."

95.     Defendants are the current owner and holder of the trademark for the mark of "CA MAX".  The trademark is registered under US serial number 78458710 and the US Registration Number of 3298794.  A copy of the status of the mark is attached hereto as Exhibit "3."  A true and correct copy of the Mark as used is attached hereto as "Exhibit "2."

96.     Defendants are the current owners and holders of the trademark for the mark of  "We get it harder".  The trademark is registered under US serial number 78459940 and US Registration Number of 3187964.  A copy of the status of the mark is attached hereto as Exhibit "4."

97.     Defendants are the current owner and holder of the trademark for mark of "ECOROADS".  Terrafusion, through its acquisition of  Ecoroads, Inc. in 2004, owned a U.S. federal registration for its ECOROADS mark for "proprietary enzyme formulation for use in soil stabilization" in International class 5 (Registration No. 3,036,550).

98.     (Hereafter, the marks of CAMAX and ECOROADS, TERRAFUSION, and We get it harder. . .  are referred to as the "**TI Marks**".)

99.     Additionally, on or about 2009, TI owned certain assets including certain intellectual property assets for, in part, certain aqueous solutions of an enzymatic raw material and surface active agents or stabilizers designed to facilitate the stabilization, compaction and bonding of soils for road-based construction, including, but not limited to, the **TI Marks**.  Attached as Exhibit "5" is a true and correct list of the said intellectual property and are hereafter referred to as the "TI Assets").

100.   Defendants are informed and believe and thereupon allege that on or before November 2010, TI entered an Authorized International Exclusive Distributor Agreement with Plaintiffs—or one of Plaintiffs' affiliated companies, which gave Plaintiffs permission to market and sell the products of TI, and use some or all of the TI Marks.

101.   Because of Plaintiffs satisfaction and overall happiness with the TI products and services, on or around December 2010, Plaintiffs approached TI to purchase all assets owned by TI, including the intellectual property assets relating to the product.

102.   On or about February 4, 2011, TI and Plaintiffs executed an Asset Purchase Agreement ("**APA**").  A true and correct copy of the APA is attached hereto as Exhibit "6" and fully incorporated herein by reference.

103.   Defendants are informed and believe and thereupon allege that as part of the sale, Plaintiffs requested that TI terminate its distributorship agreements with various third parties and not enter into any new distributor agreements with third parties.

104.   The APA provided for the date upon which the consummation of the sale contemplated by the APA would take place.  In exchange for TI's assets, Plaintiffs was required to provide, among other things, the Cash Consideration of $300,000.00 pursuant to paragraphs 2.2 and 2.3(b)(ii) of the APA, on or before February 15, 2011, or at such other time and place mutually agreed by the parties.

105.   Plaintiffs represented in paragraph 4.1 of the APA that Plaintiffs had full power and authority to consummate the APA.

106.   On or about February 11, 2011, Rotstein informed Omri Dahan, the Chief Executive Officer of TI, that Rotstein had recently incurred unexpected expenses, but would be in a position to pay the Cash Consideration by February 15, 2011.

107.   Plaintiffs did not pay the Cash Consideration by February 15, 2011.  Instead, in an email on or about February 14, 2011, Rotstein promised TI that Plaintiffs would be providing the full Cash Consideration by February 22, 2011, at the latest. Plaintiffs did not tender the full Cash Consideration by February 22, 2011.

108.   Thereafter, Plaintiffs never paid the Cash Consideration as required by the APA. Instead, Plaintiffs made a series of representations and promises to pay the Cash Consideration by a specific date and then did not make the payment as promised.  This occurred at least four times.

109.   Defendants are informed and believe and thereupon allege that Plaintiffs undertook a course of action to fraudulent representations to impose a financial chokehold

on TI, and then take all of the assets of TI, with little or no consideration, for there would not be anyone to oppose Plaintiffs' malicious actions against TI and Plaintiffs' stealing of TI's assets with no payment or obligations to TI's shareholders or creditors.

110.   In this manner, Plaintiffs promised to pay TI certain monies at various dates and then either did not make payment or only tendered a partial payment to frustrate TI's business and cause serious cash flow problems for TI, which would leave TI vulnerable to the theft and pillage of Plaintiffs.

111.   In sum, Plaintiffs breached the APA by never performing payment of the Cash Consideration under the APA, despite numerous and repeated promises to do so.

112.   Consequently, on or about 01/31/2012, TI terminated the APA and the Authorized International Exclusive Distributor Agreement.  Specifically, the termination letter states as follows:

> This letter serves as notice of termination of those certain Authorized International Exclusive Distributor Agreements as well as Asset Purchase Agreement and all other Agreements both verbal and written, between TerraFusion and Stucco Construction Materials (OR TerraFusion International), a 'Washington company ("Edward"), pursuant to Section 10(b)(i) and Section 2 of the Agreements. This letter also includes any third party Agreements signed as part of said Agreements with TerraFusion which includes any Agreements made with Surtec Systems as part of the above stated Agreements.
>
> As you know, TerraFusion is the owner of all trademarks, trade names, logos and designations (collectively, the "TerraFusion Intellectual Property") previously licensed to Edward under the Agreements. Pursuant to Section 8(d) of the Agreements, upon expiration or termination of the Agreements, Edward must immediately cease all display, advertising and use of all TerraFusion) intellectual Property. Further, under Section 8(f) of the Agreements, the license granted to Edward under the Agreements to establish and offer use to third parties of a link to the TerraFusion website terminates upon termination of the Agreements.
>
> We demand that Edward immediately cease and desist from using any and all TerraFusion Intellectual Property and further remove all links from its website to the Terra Fusion website. We expect to receive from you a written confirmation of your intent to comply immediately with the foregoing demands. . . .

A true and correct copy of said letter is attached hereto as Exhibit "7."

113.   Thereafter, on or about the beginning of February 2012, TI sold and transferred the TI Assets to MCCP for valuable consideration.

114.   MCCP purchased the TI Assets in good faith and is a good faith purchaser of the assets.  A true and correct copy of said agreement is attached hereto as Exhibit "8"

115.   MCCP is the current owner of the TI Assets.

116.   As part of Plaintiffs' systematic approach to cause financial harm to TI and steal its assets, Plaintiffs continued with a course of conduct to inflict financial harm on TI and MCCP, the good faith purchaser of TI.

117.   Specifically, after being terminated, Plaintiffs began to surreptitiously and illegally use the TI Marks, despite not having any authority to use it, despite numerous request/demands to cease and desist using the using the TI Marks.  Plaintiffs, by using TI Marks intentionally and maliciously tried and continue to mislead the public into believing that Plaintiffs and its businesses, products, websites and services are associated with, sponsored by, or otherwise authorized by Defendants thereby tarnishing the distinctive quality of the TI Marks.

118.   Additionally, Plaintiffs contacted numerous third parties and informed them that Plaintiff was the true owner of the TI Marks and products and that Defendants were using same without permission, thereby causing the third parties to stop or not want to initiate business with Defendants.

119.   Additionally, as part of all of the confusion and economic duress imposed on TI and its assets by Plaintiffs, Plaintiffs' trademark registration for ECOROADS was cancelled—in or about 2012 for inadvertent failure to file a Section 8 Declaration of Use. Despite said inadvertent cancelation, Defendants continued using the ECOROADS mark, as well as the other TI Marks, despite the ECOROADS mark no longer being registered. Defendants spent substantial time, effort, and money promoting the goods offered under the ECOROADS mark in the United States, and the ECOROADS mark is recognized and relied upon by the relevant consumers as identifying Defendants' goods and as

distinguishing them from the goods and services of others, and has come to represent and symbolize extremely valuable goodwill belonging exclusively to Defendants.

120.    On 03/05/2013, Plaintiffs—without the knowledge, consent or prior notice to Defendants—applied to register for its own use and purposes Defendants' canceled trademark of ECOROADS for "enzyme stabilizers; enzyme substrates; soil additives; soil stabilizers for roads, ponds and lakes; soil stabilizers for use in road construction" in International Class 1 and for "construction of roads, underground utilities, and housing pads; road construction; road paving; soil erosion control services; tile laying; bricklaying or block laying" in International Class 37 as shown in Application Serial No. 85-662426 (the "Application").

121.    Defendants are informed and believe and thereupon allege that Plaintiffs undertook said action against Defendant's canceled trademark of ECOROADS despite having full knowledge that Defendants continued using the ECOROADS mark, despite its no longer being registered, and that Defendants spent and continued to spend substantial time, effort, and money promoting the goods offered under the ECOROADS mark in the United States, and the ECOROADS mark is recognized and relied upon by the relevant consumers as identifying Defendants' goods and as distinguishing them from the goods and services of others, and has come to represent and symbolize extremely valuable goodwill belonging exclusively to Defendants.  By taking such actions, Plaintiffs deliberately and maliciously sought to take the ECOROADS mark from Defendants and cause further financial harm to Defendants.

122.    In an attempt to remedy the wrong caused by Plaintiffs, on 07/03/13, Defendants filed Notice of Opposition to the registration before the **UNITED STATES PATENT AND TRADEMARK OFFICE**, **Trademark Trial and Appeal Board ("USPTA").**   A true and correct copy of the docket sheet along with the said pleadings specifically referenced herein are attached hereto as Exhibit "9" and incorporated herein by reference.

123.    Thereafter, on August 23, 2013, Defendants filed an Amended Notice of Opposition.  (See Exhibit "9")

124. On March 26, 2014, the USPTA, suspended the proceedings, pending the resolution of this case. Specifically, it held as follows:

> Proceedings herein are suspended pending the disposition of the California state court proceeding between the parties.
>
> Upon review of the pleading submitted by the parties, the Board finds that on May 12, 2012, applicant filed a complaint against joint opposer Terrafusion, Inc. in the Superior Court of California, County of San Francisco County (Case No. CGC-12-520812). The complaint alleges breach of a contract between the parties to transfer ownership, among other things, of the ECOROADS trademark, and seeks, among other remedies, specific performance of the trademark transfer. On November 13, 2012, opposer filed a cross-claim seeking a declaration that the contract is terminated and not binding on the parties. On October 15, 2013, applicant filed an amended complaint which includes the same contract claim and requested remedy of specific performance.
>
> Under Trademark Rule 2.117, a civil action "does not have to be dispositive of the Board proceeding to warrant suspension, it need only have a bearing on the issues before the Board." New Orleans Louisiana Saints LLC and NFL Properties LLC v. Who Dat?, Inc., 99 USPQ2d 1550 (TTAB2011). Here, the state court may order opposer's transfer of its ECOROADs mark to applicant, and this could have a bearing on opposer's ability to prove standing and prior use of the mark in this opposition. Accordingly, the Board sua sponte suspends proceedings pending the disposition of the state court action between the parties.
>
> Within twenty days after the final determination of the civil actions, the parties must notify the Board so that this case may be called up for appropriate action.
>
> During the suspension period the Board shall be notified of any address changes for the parties or their attorneys.

(See Exhibit "9".)

///

///

## FIRST CAUSE OF ACTION

### (Breach of Written Contract)

125.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

126.   On or about February 4, 2012, TI entered into the APA with Plaintiffs.

127.   TI performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the APA.

128.   Plaintiffs breached the APA by refusing to provide a payment to TI.

129.   As a result of Plaintiffs' breach of the APA, TI suffered, and will continue to suffer monetary damages in an amount in excess of $75,000.00; the exact amount will be proven at the time of trial.

## SECOND CAUSE OF ACTION

### (Fraud/Intentional Misrepresentation)

130.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

131.   On numerous occasions between December 2011 and January 2012, Edward Rotstein represented to Omri Dahan and other officers and board members of TI that Plaintiffs had the financial ability and the funds to purchase the assets of TI for at least $300,000.00.

132.   Specifically, on numerous phone conversations between January 15, 2011 and February 4, 2011, Edward Rotstein represented to Omri Dahan and other officers and board members of TI that Plaintiffs had the financial ability and the funds to purchase the assets of TI for at least $300,000.00 on or before February 15, 2011.

133.   Additionally, on February 11, 2011, Rotstein informed Omri Dahan, the Chief Executive Officer of TI, that Plaintiffs had recently incurred unexpected expenses, but would be in a position to pay the Cash Consideration by February 15, 2011. Plaintiffs did not pay the Cash Consideration by February 15, 2011.  Instead, in an email on or about February 14, 2011, Rotstein promised TI that Plaintiffs would be providing the full

Cash Consideration by February 22, 2011, at the latest.  Plaintiffs did not tender the full Cash Consideration by February 22, 2011.

134.   Thereafter, Rotstein made numerous promises to provide the full funds of $300,000.00 on specific dates, but never tendered payment on the dates promised.

135.   Said representations and promises were false.

136.   At the time that Rotstein made said representations and promises, Rotstein knew that they were false, or made them recklessly and without regard for their truth.

137.   Rotstein knowingly made the false statements with the intent to induce TI to take certain actions to TI's detriment.

138.   TI was ignorant of the falsity of Rotstein's promises/representations and justifiably relied on Rotstein's false statements/promises in entering into the APA, continuing to negotiate with Rotstein, and taking other actions to its detriment.

139.   But for Rotstein's false statements/promises, TI would not have taken such actions.

140.   As a direct and proximate result of the acts and conduct as alleged herein by Rotstien and MOES 1 through 10, and each of them, as herein above alleged; TI suffered general and specific damages in an amount in excess of $25,000.00; the exact amount will be proven at trial.

141.   The aforementioned acts of Plaintiffs were willful, malicious, oppressive and fraudulent in that they were undertaken with the purpose of wrongfully harming TI, entitling Defendants to an award of punitive damages in a sufficient amount to Defendants for their acts and to deter such activity in the future.

142.   The oppression, malice or fraud by Rotstein and Moes 1 through 10 were done on behalf  of TII and TII authorized or ratified such conduct by an officer, director, or managing agent of the corporation. Defendant is therefore entitled to punitive damages against TII in a sufficient amount to make an example of, punish defendants, and deter future fraudulent, oppressive and malicious misconduct in the amount to be determined at trial.

///

## THIRD CAUSE OF ACTION

### (Negligent Misrepresentation)

143.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

144.   On numerous occasions between December 2011 and January 2012, Edward Rotstein represented to Omri Dahan and other officers and board members of TI that Plaintiffs had the financial ability and the funds to purchase the assets of TI for at least $300,000.00

145.   Specifically, on numerous phone conversations between January 15, 2011 and February 4, 2011, Edward Rotstein represented to Omri Dahan and other officers and board members of TI that Plaintiffs had the financial ability and the funds to purchase the assets of TI for at least $300,000.00 on or before February 15, 2011.

146.   Additionally, on February 11, 2011, Rotstein informed Omri Dahan, the Chief  Executive Officer of TI, that Plaintiffs had recently incurred unexpected expenses, but would be in a position to pay the Cash Consideration by February 15, 2011. Plaintiffs did not pay the Cash Consideration by February 15, 2011.  Instead, in an email on or about February 14, 2011, Rotstein promised TI that Plaintiffs would be providing the full Cash Consideration by February 22, 2011, at the latest.  Plaintiffs did not tender the full Cash Consideration by February 22, 2011.

147.   Thereafter, Rotstein made numerous promises to provide the full funds of $300,000.00 on specific dates, but never tendered payment on the dates promised.

148.   Said representations and promises were false.

149.   At the time that Rotstein made said representations and promises, Rotstein was negligent about knowing the truth or falsity of said representations and promises, or made them negligently and without regard for their truth.

150.   Rotstein made said representations and promises with the intent to induce TI to take certain actions to TI's detriment.

151.   TI was ignorant of the falsity of Rotstein's promises/representations and justifiably relied on Rotstein's false statements/promises in entering into the APA, continuing to negotiate with Rotstein, and taking other actions to its detriment.

152.   But for Rotstein's false statements/promises, TI would not have taken such actions.

153.   As a direct and proximate result of the acts and conduct as alleged herein by Rotstien and MOES 1 - 10, and each of them, as herein above alleged; Defendants suffered general and specific damages in an amount in excess of $25,000.00; the exact amount will be proven at trial.

## FOURTH CAUSE OF ACTION

### (Promissory Estoppel)

154.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

155.   Between February 2011 and January 2012, approximately, Rotstein made numerous promises to TI, as alleged above, that Plaintiffs would pay the full Cash Consideration, as required by the APA, in exchange for TI's extension grant of the closing date.  Such repeated promises by Rotstein were clear and unambiguous.

156.   TI is informed and believes, and on that basis alleges, that Rotstein's promises to pay the Cash Consideration and consummate the transaction, as required by the APA, were made with Rotstein's reasonable expectation that TI would forbear entering into other transactions concerning the assets covered by the APA and that the TI would permit Plaintiffs to purchase Product from SurTec at TI's wholesale price.

157.   As alleged above, Plaintiffs breached those promises.

158.   As alleged above, TI relied on Rotstein's promise to pay the Cash Consideration as required by the APA, and thus, as alleged above, made multiple extensions to the closing date, forbore entering into other transactions concerning the TI Assets and or other business and transactions, and permitted Plaintiffs to purchase Product from SurTec at TI's wholesale prices.

159.   TI's reliance was reasonable and foreseeable.

160.   As alleged above, TI forbore entering into other transactions and incurred a loss of no less than $330,000.00 in damages.

161.   TI is informed and believes, and on that basis alleges, that Plaintiffs purchased 660 gallons of Product from SurTec at wholesale price, for a total of approximately $38,940. The retail price for such amount of Product would have been approximately $297,000.

162.   As a direct and proximate result of Plaintiffs' acts as alleged above, TI has been damaged in an amount to be proven at trial of no less than $588,060.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)
### (Against all Cross-Defendants)

163.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

164.   In reliance of the promises made by Rotstein, as alleged above, TI sold Plaintiffs 660 gallons of Product from SurTec at wholesale price, for a total amount of approximately $38,940. The retail price of such amount of Product would have been approximately $297,000.

165.   As such, Plaintiffs are unjustly enriched by benefiting from the wholesale price of the Product in the amount to be determined at trial, but in no event less than $258,060.

## SIXTH CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Advantage)
### (By all Defendants against all Plaintiffs and Moes 1 through 10)

68.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

69.   For many years, Defendants have expended ample resources on the promotion of the Product around the world, including developing business relationships with third parties in order to enter into agreements to purchase the products. Particularly, until recently Defendants had been nearing completion of deals with potential purchasers

of Product in Latvia and Kazakhstan and with the probability of future economic benefit to Defendants.

70.     Defendants are informed and believe, and on that basis allege, that Plaintiffs knew of Defendants' economic relationships with third parties with the probability of future economic benefit to Defendants.

71.     Plaintiffs intentionally took action to disrupt Defendants' economic relationships with third parties, with the probability of future economic benefit to RADIANT.  In an effort to interfere with the well-earned business relationships of Defendants, and in an effort to steer potential Product purchasers away from Defendants and/or its affiliates, Plaintiffs intentionally sought out the Latvian and Kazakh third parties and threatened them and their families with physical violence and maliciously misrepresented to them that Plaintiffs own clean title to the assets underlying the Product and that Defendants are merely interlopers, including but not limited to Plaintiffs misrepresenting to the Kazakh third party that Plaintiffs' address was TI's.

72.     Defendants are informed and believe, and on that basis allege, that as a direct result of the Latvian and Kazakh third parties receipt of the threats of physical violence and fraudulent information from Plaintiffs, Defendants can no longer realize the benefit of its prospective economic advantage with the Latvian and Kazakh third parties, as they no longer desire to do business with Defendants.

73.     As a direct and proximate result of the acts and conduct as alleged herein by Plaintiffs and MOES 1 through 10, and each of them, as herein above alleged; Cross-Complainants suffered general and specific damages in an amount in excess of $25,000.00; the exact amount will be proven at trial.

74.     The aforementioned acts of the Plaintiffs and MOES 1 through 10 were willful, malicious, oppressive and fraudulent in that they were undertaken with the purpose of wrongfully harming Defendants, entitling Defendants to an award of punitive damages in a sufficient amount to punish TII and MOES 1 through 10 for their acts and to deter such activity in the future.

75.     The oppression, malice or fraud by Plaintiffs and Moes 1 through 10 was done on behalf  TII and TII authorized or ratified such conduct by an officer, director, or managing agent of the corporation. Defendants are therefore entitled to punitive damages against TII in a sufficient amount to make an example of, punish defendants, and deter future fraudulent, oppressive and malicious misconduct in the amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (Declaratory Relief )

### (Against all Plaintiffs and Moes 1 through 10)

76.     Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

77.     An actual and immediate controversy has arisen and now exists between TI and MCCP, on the one hand, and Plaintiffs regarding the legal status of the APA, the current ownership of the assets of TI, the parties' respective rights, obligations, liabilities and interests relating to the APA and the assets of TI.

78.     Defendants seek a declaration that it rightfully terminated the APA, that Plaintiffs breached the APA, that any of TI's obligations of the APA to Plaintiffs are discharged and of no binding force and effect upon TI, and that TI does not owe money to Cross Defendants.

79.     Defendants also seek a judicial declaration that MCCP is the rightful owner of the assets of TI, that Plaintiffs have current ownership interest in said assets, and that MCCP does not owe money to Plaintiffs.

80.     A judicial determination is necessary and appropriate in order to determine the rights, obligations, liabilities and interests of the parties and the ownership interest of the TI assets.

## EIGHTH CAUSE OF ACTION

### (Federal Trademark Infringement [Lanham Act § 43(a), 15 U.S.C. § 1125(a)])

81.     Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

82.     Defendants have used its trademarks in interstate commerce continuously in connection with the sale of its products, and in advertising in California, throughout the United States and overseas in various media.

83.     Defendants have expended substantial amounts of time, effort, and money in ensuring that the purchasing public associates its trademarks with Defendants' business and products. As a result of this time, effort, and money invested, Defendants have achieved a superior reputation associated with its business and products. Defendants' business and products are uniquely identified by its trademarks. The public has come to associate those trademarks exclusively with Defendants' business and products, and with no other business or other business's products.

84.     Defendants are informed and believe, and on that basis allege, that Plaintiffs have infringed on Defendants' trademark rights by marketing, selling, and offering to sell products not manufactured by Defendants in interstate and international commerce under or in connection with the U.S. Registered Trademarks.   Specifically, Plaintiffs have infringed Defendants' trademark rights by marketing their products using the U.S. Registered Trademarks and TI Marks.

85.     Defendants are informed and believe, and on that basis allege, that Plaintiffs' products are intended by Plaintiffs to appear substantially similar to Defendants' products.

86.     Since terminating the Distribution Agreement on or about January 31, 2012, Defendants have not given Plaintiffs permission or authority to use the U.S. Registered Trademarks and TI Marks in any form, including any duplicates, variants, or colorable imitations, or any other trademark used by Defendants to suggest that there is any connection between Plaintiffs and Defendants.

87.     Defendants have expressly withdrawn and revoked any permission or authority given to Plaintiffs to use the U.S. Registered Trademarks and TI Marks in any form, including any duplicates, variants, or colorable imitations, or any other trademark used by Defendants or to suggest that there is any connection between Plaintiffs and Defendants.

88.     Plaintiffs use of the U.S. Registered Trademarks and TI Marks in connection with Plaintiffs ' websites, businesses, products, and services is misleading and is likely to cause confusion and mistake, and to deceive the public into believing that Plaintiffs and their websites, businesses, products, and services are associated with or authorized by Defendants.

89.     Defendants are informed and believe, and on that basis allege, that Plaintiffs have committed these acts of trademark infringement with the intent to cause confusion and mistake and to deceive the public into believing that Plaintiffs and their websites, businesses, products, and services are associated with or authorized by Defendants.

90.     Plaintiffs unlawful use of the U.S. Registered Trademarks, Brazil Registered Trademarks and TI Marks in interstate commerce as alleged herein constitute unfair competition and trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

91.     As a direct and proximate result of Plaintiffs' acts of unfair competition and trademark infringement, Defendants have been and continue to be injured in their business and property, and have sustained and will continue to sustain substantial damage to its business, goodwill, reputation, and profits in an amount not presently known.

92.     Defendants have no adequate remedy at law against this unfair competition and infringement of its trademark rights as alleged herein. Unless Plaintiffs are preliminarily and permanently enjoined from their unlawful use of the U.S. Registered Trademarks, Brazil Registered Trademarks and TI Marks as alleged herein, Defendants will suffer irreparable harm.

## NINTH CAUSE OF ACTION

### (Federal Unfair Competition and False Designation Of Origin [Lanham Act § 43(a), 15 U.S.C. § 1125(a)])

166.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

167.   The U.S. Registered Trademarks and TI Marks have become associated with and hence identify Defendants' business and its products and no other business.

168.   By reason of Plaintiffs' wrongful use of the U.S. Registered Trademarks and TI Marks in connection with the offering for sale and sale of their products and services, purchasers and prospective purchasers of Plaintiffs' products and services are deceptively led to believe that Plaintiffs' products and services originate with or are sponsored by, or otherwise authorized by, Defendants when in fact Plaintiffs no longer have any connection whatsoever with Defendants.

169.   Plaintiffs' misleading use of the U.S. Registered Trademarks, and Defendants' TI Marks and misrepresentations concerning their products have a substantial effect on interstate commerce and on Defendants' use of the U.S. Registered Trademarks, and TI Marks and constitutes false advertising, false designation of origin, and false representation of the origin of Plaintiffs' products and services in and affecting interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

170.   Defendants are informed and believe, and on that basis allege, that Plaintiffs have committed these acts of infringement with the intent to cause confusion and mistake and to deceive the public into believing that Plaintiffs or their businesses, products, websites, and services are associated with or authorized by Defendants.

171.   As a direct and proximate result of Plaintiffs' acts of unfair competition, Defendants have been and continue to be injured in their business and property and have sustained and will continue to sustain substantial damage to their business, goodwill, reputation, and profits in an amount not presently known.

172.   Defendants have no adequate remedy at law against Plaintiffs' acts of unfair competition as alleged herein. Unless Plaintiffs are preliminarily and permanently enjoined from their acts of unfair competition, Defendants will suffer irreparable harm.

## TENTH CAUSE OF ACTION

### (Federal Dilution Of Distinctiveness Of Trademark [Lanham Act § 43(c), 15 U.S.C. § 1125(c)])

173.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

174.   The U.S. Registered Trademarks and TI Marks are famous marks under applicable law.

175.   Any use or allowed use by Plaintiffs, or any of them, of the U.S. Registered Trademarks, and TI Marks is likely to deprive Defendants of the benefit of the goodwill attached to them, to injure Defendants' business reputation, and to dilute the distinctive quality of the U.S. Registered Trademarks and TI Marks.

176.   Plaintiffs' use of the U.S. Registered Trademarks and TI Marks is likely to tarnish Defendants.

177.   Any use by Plaintiffs of the U.S. Registered Trademarks, and TI Marks violates the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

178.   Defendants are informed and believe, and on that basis allege, that Plaintiffs, in engaging in the conduct described herein, willfully intended to trade on Defendants' reputation and to cause injury to Defendants.

179.   As a direct and proximate result of Plaintiffs ' unlawful acts as alleged herein, Defendants have suffered and will continue to suffer injury to their business, goodwill, and property in an amount not presently known.

180.   Defendants have no adequate remedy at law. Unless Plaintiffs are preliminarily and permanently enjoined from committing these unlawful acts as set forth above, including the use of the U.S. Registered Trademarks, and TI Marks, Defendants will continue to suffer irreparable harm.

## ELEVENTH CAUSE OF ACTION

### (Domain Name Infringement, [Lanham Act § 43(c), 15 U.S.C. § 1125(d)]

181.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

182.   The TI Marks have become associated with and hence identify Defendants' business and their products and no other business in connection with the promotion and sale of automotive and industrial chemical products and equipment and other programs, and are protected as marks under 15 U.S.C. § 1125.

183.   Plaintiffs have registered and/or used and are continuing to use a domain name in connection with the promotion and sale of automotive and industrial chemical products and equipment and other products that are identical or confusingly similar to the distinctive and famous TI Marks.

184.   Such registration and use were conducted with a bad faith intent on the pan of Plaintiffs to profit from the distinctive and famous U.S. Registered Trademarks, and TI Marks, and were done with the intent to cause confusion and mistake and to deceive the public into believing that the Plaintiffs or their business, products, websites, and services are associated with or authorized by Defendants.

185.   As a direct and proximate result of Plaintiffs' unlawful acts as set forth above, including the use of the U.S. Registered Trademarks, Brazil Registered Trademarks and TI Marks, Defendants have suffered and will continue to suffer injury to their business, goodwill, and property in an amount not presently known.

186.   Defendants have no adequate remedy at law. Unless Plaintiffs are preliminarily and permanently enjoined from committing these unlawful acts as set forth above, including the use of the U.S. Registered Trademarks, and TI Marks, Defendants will continue to suffer irreparable harm.

## TWELFTH CAUSE OF ACTION

### (Federal Registered Trademark Infringement [Lanham Act § 32(1), 15 U.S.C. § 1114(1)])

187.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

188.   Plaintiffs have infringed the U.S. Registered Trademarks by, among other things, their use of those marks on packaging and promotional materials and on web sites directed to the public. Since terminating the Distribution Agreement on or about January 31, 2012, Defendants have not given permission or authority to any of Plaintiffs to use Defendants' federally registered trademarks.

189.   Plaintiffs' use of the U.S. Registered Trademarks has caused confusion and mistake and is likely to continue to cause confusion and mistake, and to deceive the public

into believing that Plaintiffs or their businesses, products, websites or services are associated with or authorized by Defendants.

190.   Defendants are informed and believe, and on that basis allege, that Plaintiffs have committed these acts of infringement with the intent to cause confusion and mistake and to deceive the public into believing that Plaintiffs or their business, products, websites and services are associated with or authorized by Defendants.

191.   Plaintiffs' unlawful use of the U.S. Registered Trademarks in interstate commerce constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

192.   Defendants are informed and believe, and on that basis allege, that Plaintiffs are engaging in the conduct described herein, willfully intended to trade on Defendants' reputation and to cause injury to Defendants.

193.   As a direct and proximate result of Plaintiffs' unlawful acts as set forth above, including the use of the U.S. Registered Trademarks, Defendants have suffered and will continue to suffer injury to their business, goodwill, and property in an amount not presently known.

194.   Defendants have no adequate remedy at law. Unless Plaintiffs are preliminarily and permanently enjoined from committing these unlawful acts as set forth above, including the use of the U.S. Registered Trademarks, Defendants will continue to suffer irreparable harm.

## THIRTEENTH CAUSE OF ACTION

### (Trademark Infringement [California Common Law])

195.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

196.   Plaintiffs ' use of the U.S. Registered Trademarks, and TI Marks is misleading and likely to cause confusion and mistake, and to deceive the public into believing that Plaintiffs and Plaintiffs' products are associated with or authorized by Defendants. Such use constitutes trademark infringement under California common law.

197.   As a direct and proximate result of Plaintiffs' acts of trademark infringement, Defendants have been and continue to be injured in their business and property and have sustained and will continue to sustain substantial damage to their business, goodwill, reputation, and profits in an amount not presently known.

198.   Defendants have no adequate remedy at law against Plaintiffs' acts of trademark infringement as alleged herein. Unless Plaintiffs are preliminarily and permanently enjoined from their unlawful use of the U.S. Registered Trademarks, and TI Marks, Defendants will suffer irreparable harm.

199.   In acting as alleged herein, Plaintiffs have acted intentionally and despicably with oppression, fraud, and malice toward Defendants.  Defendants therefore are entitled to an award of punitive damages for the sake of example and by way of punishing Plaintiffs pursuant to California Civil Code § 3294.

## FOURTEENTH CAUSE OF ACTION

### (Registered Trademark Infringement [California B&P Code § 14335(a)]

200.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

201.   Plaintiffs' unlawful use of the U.S. Registered Trademarks constitutes trademark infringement in violation of California Business & Professions Code § I 4335(a).

202.   Defendants are informed and believe, and on that basis allege, that Plaintiffs, are engaging in the conduct described herein, willfully intended to trade on Defendants' reputation and to cause injury to Defendants.

203.   As a direct and proximate result of Plaintiffs' unlawful acts as set forth above, including the use of the U.S. Registered Trademarks, Defendants have suffered and will continue to suffer injury to their business, goodwill, and property in an amount not presently known.

204.   Defendants have no adequate remedy at law. Unless Plaintiffs are preliminarily and permanently enjoined from committing these unlawful acts as set forth

above, including the use of the U.S. Registered Trademarks, Defendants will continue to suffer irreparable harm.

205.   Defendants are informed and believe, and on that basis allege, that in acting as alleged herein Plaintiffs have acted intentionally and despicably with oppression, fraud and malice toward Defendants.  Defendants therefore are entitled to an award of punitive damages for the sake of example and by way of punishing Plaintiffs pursuant to California Civil Code § 3294.

## FIFTEENTH CAUSE OF ACTION

### (Injury To Business Reputation And Dilution Of Distinctiveness Of Trademark [[California B&P Code § 14330])

206.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

207.   As a direct result of its long and extensive experience, care, and skill in producing and marketing its products under the U.S. Registered Trademarks, and TI Marks, Defendants have acquired a reputation for excellence and command extensive sales throughout California, the United States and the world.

208.   Plaintiffs, by using the U.S. Registered Trademarks, and TI Marks in connection with their business, products, and services as alleged herein, are misleading the public into believing that Plaintiffs and their business, products, and services are associated with, sponsored by, or otherwise authorized by Defendants.

209.   Plaintiffs, by using the U.S. Registered Trademarks, and TI Marks, are misleading the public into believing that Plaintiffs and their businesses, products, websites and services are associated with, sponsored by, or otherwise authorized by Defendants and thereby tarnishes the distinctive quality of the U.S. Registered Trademarks and TI Marks.

210.   Plaintiffs ' acts are likely to deprive Defendants of the benefit of the goodwill attached to the U.S. Registered Trademarks, and TI Marks, to injure Defendants' business reputation, and to dilute the distinctive quality of the U.S. Registered Trademarks and TI

Marks. Plaintiffs ' acts constitute a violation of California Business and Professions Code § 14330(a).

211.   As a direct and proximate result of Plaintiffs' acts as alleged herein, Defendants have been and continue to be injured in their business and property and have sustained and will continue to sustain substantial damage to their business, goodwill, reputation, and profits in an amount not presently known.

212.   Defendants have no adequate remedy at law against this dilution of the distinctive quality of the U.S. Registered Trademarks and TI Marks and injury to their business reputation. Unless Plaintiffs are preliminarily and permanently enjoined from diluting the distinctive quality of the U.S. Registered Trademarks and TI Marks and enjoined from injuring Defendants' business reputation, Defendants will suffer irreparable harm.

## SIXTEENTH CAUSE OF ACTION

### (Unfair Competition And False Designation Of Origin [California B&P Code §§ 17200 And 17100])

213.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

214.   Defendants are informed and believe, and on that basis allege, that Plaintiffs ' unlawful acts as set forth above, including the use of the U.S. Registered Trademarks and TI Marks, have a substantial effect on commerce, and constitute unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising in violation of Sections 17200 and 17100, et seq., of the California Business & Professions Code.

215.   Defendants are informed and believe, and on that basis allege, that Plaintiffs, in engaging in the conduct described herein, willfully intended to trade on Defendants' reputation and to cause injury to Defendants.

216.   As a direct and proximate result of Plaintiffs' unlawful acts as set forth above, including the use of the U.S. Registered Trademarks and TI Marks, Defendants are

entitled to restoration of any money or property which may have been acquired by means of such unfair competition.

217.   Defendants have no adequate remedy at law. Unless Plaintiffs are preliminarily and permanently enjoined from committing these unlawful acts as set forth above, including the use of the U.S. Registered Trademarks and TI Marks, Defendants will continue to suffer irreparable harm.

## SEVENTEENTH CAUSE OF ACTION

### (Unfair Competition [California Common Law])

218.   Defendants reallege and incorporate herein, by reference, all of the preceding paragraphs as though fully set forth at this point.

219.   The TI Marks have become associated with and hence identify Defendants' business and products and no other business. Defendants have not authorized Plaintiffs' current use of TI Marks.

220.   As alleged herein, Plaintiffs have unfairly competed against Defendants in violation of California law by using the U.S. Registered Trademarks  and TI Marks to induce the public into believing that Plaintiffs are associated with, and their business, products, and services originate with or are authorized by, Defendants, thereby allowing Plaintiffs to trade upon the reputation of and goodwill inherent in the TI Marks  and to use the TI Marks to their commercial benefit.

221.   As a direct and proximate result of Plaintiffs' acts of unfair competition, Defendants have been and continue to be injured in their business and property and have sustained and will continue to sustain substantial damage to their business, goodwill, reputation, and profits in an amount not presently known.

222.   Defendants have no adequate remedy at law against Plaintiffs' acts of unfair competition as alleged herein. Unless Plaintiffs are preliminarily and permanently enjoined from their acts of unfair competition, Defendants will suffer irreparable harm.

223.   In acting as alleged herein, Plaintiffs have acted intentionally and despicably with oppression, fraud, and malice toward Defendants.  Defendants therefore are entitled

to an award of punitive damages for the sake of example and by way of punishing Plaintiffs pursuant to California Civil Code § 3294.

WHEREFORE, Defendants pray for relief as follows:

**FIRST CAUSE OF ACTION**

1. For general, special, incidental, and consequential damages according to proof;

2. For pre and post-judgment interest according to proof; and

3. For costs and other damages according to proof.

**SECOND CAUSE OF ACTION**

1. For general, special, incidental, and consequential damages according to proof;

2. For pre and post-judgment interest according to proof; and

3. For costs and other damages according to proof;

4. For punitive and exemplary damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

1. For general, special, incidental, and consequential damages according to proof;

2. For pre and post-judgment interest according to proof;

3. For costs and other damages according to proof.

**FOURTH CAUSE OF ACTION**

1. For general, special, incidental, and consequential damages according to proof;

2. For pre and post-judgment interest according to proof;

3. For costs and other damages according to proof.

4. That Plaintiffs be estopped from asserting a cause of action against Defendants for breach of contract or otherwise.

**FIFTH CAUSE OF ACTION**

1. For general, special, incidental, and consequential damages according to proof;

2. For pre and post-judgment interest according to proof;

3. For costs and other damages according to proof.

**SIXTH CAUSE OF ACTION**

1. For general, special, incidental, and consequential damages according to proof;

2. For pre and post-judgment interest according to proof;

3. For costs and other damages according to proof;

4. For punitive and exemplary damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**

1.      For a declaration that (1) Plaintiffs breached the APA, (2) Defendants properly terminated the APA, (3) that Defendants do not owe money to Plaintiffs, (4) that MCCP is the rightful owner of the TI Assets, (5) that Rotstien and TII have no ownership interest in said assets, and (6) that MCCP does not owe any money to Plaintiffs.

**FOR THE EIGHTH THROUGH THE SEVENTEENTH CAUSES OF ACTION**

1. For general, special, incidental, and consequential damages according to proof;

2. For pre and post-judgment interest according to proof;

3. For costs and other damages according to proof;

4. For punitive and exemplary damages in an amount to be proven at trial;

5. That an accounting be ordered of all of the profits realized by Plaintiffs, or others acting in concert or participation with them, from Plaintiffs' unauthorized use, infringement and dilution of the U.S. Registered Trademarks, and TI Marks, and acts of unfair competition, false designation of origin and false advertising described herein;

6. That Defendants recover their damages sustained as a result of Plaintiffs' unauthorized use, infringement and dilution of the U.S. Registered Trademarks, and TI Marks, and acts of unfair competition, false designation of origin and false advertising described herein;

7. That Defendants' actual damages be increased pursuant to 15 U.S.C. § 1117.

8. That Defendants recover their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

9. That Defendants recover restitution pursuant to California Business and Professions Code § 17200 et seq.

10. That Defendants be awarded punitive damages pursuant to California Civil Code § 3294.

11. That the Court impose a constructive trust upon Plaintiffs' real and personal property and assets, including, but not limited to, bank savings and other financial accounts, consisting of profits from or obtained by Plaintiffs' illegal and tortious acts, as alleged

herein;

12. That the Court issue a declaration that Defendants have priority to register and use their name as a mark or in an Internet domain name in the United States and other countries in connection with the road stabilization products promoted and sold by Defendants.

**ON ALL CAUSES OF ACTION**

1. For costs of suit herein incurred;

2. For reasonable attorney's fees according to proof; and

3. For such other and further relief as this Court may deem proper.

**SILVER LAW FIRM, APC**

Dated:  07/21/2015          By:  /s/ Zvi A. Silver
                                 Zvi A. Silver
                                 444 West C Street, Suite 405
                                 San Diego, CA 92101
                                 (619) 231-1600
                                 hsilver@silverlawfirm.com

                                 *Attorneys for Defendants Terrafusion, Inc. and* MCC Partners NY, LLC

# DEMAND FOR TRIAL BE JURY

     In accordance with their constitutional rights, Defendants hereby demand a trial by Jury.


Dated:   07/21/2015               By:   /s/ Zvi A. Silver
                                   Zvi A. Silver
                                   444 West C Street, Suite 405
                                 San Diego, CA 92101
                                 (619) 231-1600
                                 hsilver@silverlawfirm.com

*Attorneys for Defendants Terrafusion, Inc. and* MCC Partners NY, LLC

Defendants Terrafusion, inc and MCC Partners NY LLC's Answer and Counterclaim -
**Court File No. 3:1513-cv-02993-RS**

1
2
3
4
5

## CERTIFICATE OF SERVICE

6      I, Zvi A, Silver, hereby certify that on July 21, 2015 a true copy of the foregoing

7  was delivered by electronic mail upon all counsel of record.

8
9

10  Dated:  07/21/2015                    By:  /s/ Zvi A. Silver
         Zvi A. Silver
11         444 West C Street, Suite 405
         San Diego, CA 92101
12         (619) 231-1600
         hsilver@silverlawfirm.com
13
         *Attorneys for Defendants Terrafusion, Inc. and*
14       MCC Partners NY, LLC

15
16
17
18
19
20
21
22
23
24
25
26
27
28