UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERRAFUSION INTERNATIONAL, INC., et al.,

                Plaintiffs,

     v.

TERRAFUSION, INC., et al.,

                Defendants.

Case No.  15-cv-02993-RS

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT**

## I.  INTRODUCTION

Plaintiffs Edward Rotstein and TerraFusion International, Inc. move for entry of default judgment against defendants Terrafusion Inc. and MCCP Inc., including dismissal of counterclaims filed by counter-plaintiffs Terrafusion Inc. and MCC Partners NY LLC. Defendants and counter-plaintiffs have failed to respond to the motion.  For the reasons that follow, plaintiffs' motion is granted in part and denied in part.

## II.  BACKGROUND[1]

Incorporated in 2003, Terrafusion, Inc. ("Terrafusion") specialized in soil stabilization products used in road construction, including one such product called EcoRoads.  Beginning in 2009, a company owned by Rotstein became a distributor of EcoRoads.  In February 2011, Rotstein negotiated an Asset Purchase and Sale Agreement ("Agreement") with Terrafusion.  To that end, he created a similarly-named company, TerraFusion International, Inc. ("TF International"), for purchasing Terrafusion's assets.  Under the Agreement, TF International

---

[1] This background is based on the factual allegations in the complaint.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.")

United States District Court
Northern District of California

agreed to buy certain road construction technology assets from Terrafusion, including patents, trademarks, contracts, a website, scientific reports, and marketing materials ("Assets"), for $300,000 and a transfer of 10% of shares in TF International. Although the Agreement listed a closing date of February 15, 2011, Terrafusion signed it after the closing date. Subsequent to the execution of the Agreement, TF International paid Terrafusion approximately $70,000. Terrafusion never set a new closing date and TF International never paid the remaining $230,000.

Under the terms of the Agreement, defendants represented the Assets were free and clear of all liens. After the Agreement was executed, plaintiffs learned of a number of creditors threatening or pursuing claims against Terrafusion. Terrafusion subsequently sought to modify the Agreement to require TF International to assume its liabilities. In November 2011, Terrafusion began negotiating to sell the Assets instead to MCCP, Inc. ("MCCP"), one of the parties threatening to sue Terrafusion. At that point, plaintiffs offered to pay Terrafusion's debt to MCCP's president, Mark Cukier, as part of its performance. In January 2012, Terrafusion decided that if plaintiffs did not agree to modify the terms of the Agreement to assume all of its liabilities, it would terminate the Agreement and sell the Assets to MCCP. In February 2012, Terrafusion sent Rotstein a letter cancelling the Agreement. Terrafusion also terminated the assignment of one contract that it had previously assigned to TF International. Terrafusion did not return any portion of the $70,000 paid by plaintiffs.

In May 2012, plaintiffs filed suit against Terrafusion. They added MCCP as a defendant in their second amended complaint ("SAC"). In the SAC, plaintiffs aver that Terrafusion sold the Assets to MCCP allegedly in return for MCCP's agreement to pay off its debts, though MCCP had no intention of actually repaying any debts and, instead, the parties agreed that MCCP would share its profits with Terrafusion's investors. According to plaintiffs, the sale was made to hinder Terrafusion's creditors because Terrafusion did not receive a reasonably equivalent value for the assets sold and was left insolvent.

In July 2015, Terrafusion and MCC Partners NY LLC answered the SAC and filed counterclaims based, among other things, on plaintiffs' alleged failure to pay the full cash

ORDER RE: MOTION FOR DEFAULT JUDGMENT
CASE NO. 15-cv-02993-RS

2

consideration by the Agreement's closing date.  In the Answer, defendants alleged MCCP was wrongly named and that MCC Partners NY LLC is the current owner of the Assets.   They did not challenge service or personal jurisdiction.

In November 2016, plaintiffs filed motions to dismiss and for summary judgment.  Shortly thereafter, counsel for defendants moved to withdraw and to continue the hearing on plaintiffs' pending motions.  The motion to withdraw was granted and the hearing on plaintiffs' motions was continued.  Defendants were ordered to retain new counsel immediately, but they have not thus far done so.  On February 9, 2017, Mark Cukier, president of MCC Partners NY, LLC, mailed a document entitled "Answers for the Purpose of Defending Mark Cukier and Demanding Trial By Jury," which was stricken on the basis that Cukier is not named in the complaint and may not represent defendants.[2]  Thereafter, plaintiffs applied for entry of default and the clerk appropriately entered default against defendants.  Plaintiffs now move for default judgment.

### III.  LEGAL STANDARD

Following entry of default and a finding of jurisdiction, courts are authorized to grant default judgment in their discretion.  *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one.").  Factors that a court may consider in exercising such discretion include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except for those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  A court, however,

---

[2] Although this order did not explicitly strike the Answer originally filed by defendants, the February 14, 2017 order did so in effect by directing plaintiffs to proceed by way of default.

United States District Court
Northern District of California

retains the authority to require a plaintiff to "establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2)(C) (also giving a court the authority to "investigate any other matter" in order to enter or effectuate judgment).

## IV. DISCUSSION

### A. Adequacy of Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C–00–0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). It is undisputed that plaintiffs properly served Terrafusion. *See* Dkt. No. 1 at ¶ 3. It does not appear that MCCP was properly served, but defendants answered the claims against MCCP and never contested service of process. *See* Dkt. No. 6. While defendants stated in their Answer that MCCP was "wrongly named" as "MCCP Inc." rather than "MCC Partners NY LLC," they nevertheless acknowledged they were answering the claims against MCCP.[3] Accordingly, defendants waived the defense of insufficient service of process. *See* Fed. R. Civ. P. 12(h)(1)(B).[4]

### B. Failure to Defend

Under Rule 55, a default judgment is an available remedy to a plaintiff when the defendant has "failed to plead or otherwise defend" the lawsuit. Fed. R. Civ. Proc. 55(a). Here, defendants

---

[3] Other courts have refused to elevate form over substance in similar disputes over technical entity names. *See, e.g.*, *David v. Hooker, Ltd.*, 560 F.2d 412, 414 (9th Cir. 1977) (affirming district court order against one corporate entity where two corporate entities were named in the complaint, but defendants insisted the second entity did not exist even though that entity's name was listed in the operative agreement); *Zweizig v. Rote*, No. 3:14-CV-00406-ST, 2016 WL 8732309, at *1 (D. Or. Feb. 19, 2016) (noting that one of the defendants named in the caption was an "assumed business name" for another entity, which was listed in the caption and responded to the complaint). Out of an abundance of caution, the order of judgment will enter against MCCP Inc. and MCC Partners NY LLC.

[4] Similarly, personal jurisdiction over defendants is appropriate here because defendants failed to dispute personal jurisdiction in their Answer. *See Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (a "general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction"); *see also* Fed. R. Civ. P. 12(h)(1).

United States District Court
Northern District of California

did initially defend the action—they filed an Answer.  After their counsel withdrew from the case, however, they failed to obtain new counsel to represent them.  They were indisputably aware of their need to obtain counsel because their representative, Mark Cukier, participated in the hearing on their former counsel's motion to withdraw.  At that hearing, Cukier was specifically advised that a corporation may appear in federal court only through licensed counsel.  Nevertheless, defendants failed to obtain counsel.  A corporation's failure to retain counsel can support an entry of a default judgment.  *See United States v. High Country Broadcasting Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (stating that it "was perfectly appropriate" for the district court to enter a default judgment against a company when it failed to retain counsel).

**C. *Eitel* Factors**

Many of the *Eitel* factors weigh in favor of default judgment here.  If the motion for default judgment were to be denied, plaintiffs would likely be without a remedy.  Defendants have been given multiple opportunities to participate in this litigation, but they have failed to do so.  Also, even though defendants filed an answer to plaintiffs' complaint, in which they asserted various affirmative defenses, the possibility of a dispute concerning material facts is small given defendants' failure to defend.  Finally, there is no indication that defendants' default was due to excusable neglect.  They were warned to retain new counsel six months ago and they offer no excuse for their delay.

The only *Eitel* factors that deserve closer analysis are the second and third factors—i.e., the merits of plaintiffs' substantive claims and the sufficiency of the complaint.  These factors basically "require that a plaintiff state a claim on which the [plaintiff] may recover."  *Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).  Plaintiffs assert seven claims: (1) breach of contract; (2) unfair business practices; (3) specific performance; (4) promissory estoppel; (5) unjust enrichment; (6) interference with prospective economic advantage; and (7) fraudulent conveyance.

1. *Breach of Contract*

United States District Court
Northern District of California

The Agreement includes a choice-of-law provision which specifies that Delaware law should be applied to contractual disputes.  Under Delaware law, a breach of contract claim requires proof of the existence of a contract, the breach of an obligation imposed by that contract, and resulting damage to the non-breaching party.  *See VLIW Technology, LLC v. Hewlett-Packard Co. Stmicroelectronics, Inc*., 840 A.2d 606, 612 (Del. 2003).  It is well-established that to recover damages for a breach of contract, the plaintiff must demonstrate substantial compliance with all of the provisions of the contract or provide an excuse for nonperformance.  *See Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc*., No. CV 5886VCP, 2013 WL 3934992, at *10 (Del. Ch. July 24, 2013), *aff'd*, 108 A.3d 1225 (Del. 2015).  Here, plaintiffs do not allege full performance of their obligations under the Agreement; they admit they paid only $70,000 of the $300,000 due.  Instead, they allege Terrafusion breached the Agreement, thereby excusing their nonperformance.  In resolving disputes among parties who each claim that the other has breached, courts will "[o]ften . . . impose liability on the party that committed the *first material breach*."  E. Allen Farnsworth, Farnsworth on Contracts § 8.15, at 439 (1990) (emphasis in original).

Plaintiffs claim Terrafusion breached the Agreement by: (i) failing to set a new closing date, (ii) attempting to change the terms of the Agreement, and (iii) misrepresenting their title to the Assets.  The first two allegations are insufficient to state a claim for breach of contract because plaintiffs fail to allege whether Terrafusion's refusal to set a new closing date or attempt to modify the Agreement occurred before or after their own decision to pay less than full consideration.  While plaintiffs claim Terrafusion prevented them from paying the full cash consideration by failing to agree to a new closing date, it appears Terrafusion did so *after* plaintiffs decided to pay only $70,000.  Indeed, plaintiffs concede Terrafusion accepted their $70,000 partial payment.  Plaintiffs do not allege attempting to pay $300,000 when they made the $70,000 payment, nor do they allege willingness or ability to do so.  They offer no explanation for why they initially paid only $70,000 of the $300,000 due under the Agreement.

As to the third allegation, while plaintiffs characterize it in the SAC as a "material breach" it is, at best, an allegation of fraudulent inducement.  Plaintiffs acknowledge that Terrafusion's

1    title representation was untrue at the time the Agreement was signed.  In fact, they allege they

2    would not have entered into the Agreement if the representation and warranty contained in Section

3    3.4 had not been made by Terrafusion.  SAC ¶ 17.  While plaintiffs' allegations suffice to state a

4    claim for unjust enrichment based on fraudulent inducement, they do not suffice to state a claim

5    for breach of contract.  Accordingly, judgment will not be entered in favor of plaintiffs on their

6    breach of contract claim.

7                        2. *Unfair Business Practices*

8         California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, creates a

9    cause of action for business practices that are unlawful, unfair, or fraudulent.  Here, plaintiffs'

10   claim is brought under the fraudulent prong; they allege defendants' conduct was "deceptive."

11   SAC ¶ 35.  A business practice is "fraudulent" if "members of the public are likely deceived."

12   *Committee on Children's Television v. Gen. Foods. Corp*., 35 Cal.3d 197, 214 (1983); *see also*

13   *South Bay Chevrolet v. GMAC*, 72 Cal.App.4th 861, 888 (1999) ("'Fraudulent,' as used in the

14   statute, does not refer to the common law tort of fraud but only requires a showing members of the

15   public are likely to be deceived.")  Here, plaintiffs do not allege that the public was impacted by

16   defendants' alleged actions.  Their allegations thus fail to state a claim for relief under the UCL.

17   *See, e.g.*, *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099 (C.D. Cal.

18   2001) ("[I]t is necessary under the fraudulent prong to show deception to some members of the

19   public, or harm to the public interest, and not merely to the direct competitor or other non-

20   consumer party to a contract."); *Medina v. Microsoft Corp*., No. C 14-0143 RS, 2014 WL

21   2194825, at *3 (N.D. Cal. May 23, 2014) (same).  Accordingly, judgment will not be entered in

22   favor of plaintiffs on their UCL claim.

23                        3. *Specific Performance*

24        "Specific performance is not itself a cause of action, but rather "a *remedy* for breach of

25   contract."  *Golden West Baseball Co. v. City of Anaheim*, 25 Cal.App.4th 11, 49 (1994) (italics in

26   original).  Accordingly, judgment will not be entered in favor of plaintiffs on their stand-alone

27

28

United States District Court
Northern District of California

ORDER RE: MOTION FOR DEFAULT JUDGMENT
CASE NO. 15-cv-02993-RS

7

claim for specific performance.  The appropriateness of specific performance as a remedy is discussed below.

### 4. *Promissory Estoppel*

The elements of a claim for promissory estoppel are: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance that is both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance. *Joffe v. City of Huntington Park*, 201 Cal.App.4th 492, 513 (2011).  "Conceptually, promissory estoppel is distinct from contract in that the promisee's justifiable and detrimental reliance on the promise is regarded as a substitute for consideration required as an element of an enforceable contract." *Toscano v. Greene Music*, 124 Cal.App.4th 685, 692–693 (2004).

In this case, all the promises made by Terrafusion were bargained for and supported by consideration.  Plaintiffs do not allege that they performed to their detriment in reliance upon promises made outside the written agreement and that such performance was not bargained for. To the contrary, they allege: "Defendant, *through the written Agreement*, promised that it would transfer clear title to the Assets pursuant to the terms of the Agreement." SAC ¶ 45 (emphasis added).  The doctrine of promissory estoppel is thus inapplicable here.  *See, e.g.*, *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) (stressing that the promissory estoppel doctrine is limited "to cases where no benefit flows to the promisor").  Accordingly, judgment will not be entered in favor of plaintiffs on their promissory estoppel claim.

### 5. *Unjust Enrichment*

The elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000).  Generally, a claim for unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see also Rosal v. First Federal Bank of America*, 671 F. Supp.2d 1111, 1133 (N.D. Cal. 2009) ("a claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort").  California courts consider unjust

United States District Court  
Northern District of California

enrichment a principle that gives rise to restitution where a defendant may otherwise benefit unjustly because no valid contract exists. *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004). Restitution may be awarded either (1) in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective, or (2) where a defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in tort. *Id*.

In the SAC, plaintiffs allege defendants were unjustly enriched by keeping the $70,000 and benefitting from plaintiffs' promotion of the Eco Roads technology. These allegations are sufficient to state a claim for unjust enrichment and judgment will enter in plaintiffs' favor on that claim. As noted above, plaintiffs allege that the Agreement was obtained through fraud, but they do not state a valid claim for breach of contract. Accordingly, restitution is proper in lieu of breach of contract damages. The proper extent of that restitution is discussed in the remedies section below.

### 6. *Tortious Interference with Prospective Economic Advantage*

The essential elements of a claim for intentional interference with prospective economic relations are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) the defendant's wrongful conduct; (5) actual disruption of the relationship; and (6) economic harm to the plaintiff proximately caused by the wrongful acts of the defendant. *See* CACI No. 2202. As to the "wrongful conduct" element, a plaintiff must plead "that the defendant's interference was wrongful by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A. Inc.*, 11 Cal.4th 376, 392-93 (1995); *see also Settimo Associates v. Environ Systems, Inc.* 14 Cal.App.4th 842, 845 (1993) ("The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition.").

1     Here, plaintiffs allege MCCP used the threat of legal action related to repayment of an

2  outstanding debt in an effort to induce Terrafusion to breach the Agreement.  They do not allege,

3  however, that the threat of legal action was baseless or otherwise improper.  Plaintiffs further

4  allege that MCCP "knowingly received" confidential communications from Terrafusion's board of

5  directors, in connection with its efforts to interfere with the Agreement.  Plaintiffs do not allege,

6  however, that MCCP improperly sought out or used those communications.  To the contrary, as

7  pleaded, plaintiffs suggest that Terrafusion (or its representatives) improperly disclosed its own

8  confidential communications to MCCP.  Without allegations that MCCP's legal threat was

9  improper or that MCCP improperly sought or used confidential information, its motive for

10  threatening suit is irrelevant.  *See San Jose Construction, Inc. v. S.B.C.C., Inc*., 155 Cal.App.4th

11  1528, 1544-45 (2007) ("[A]n act must be wrongful by some legal measure, rather than merely a

12  product of an improper, but lawful, purpose or motive.'").  Accordingly, plaintiffs have failed to

13  allege any independent wrongful act committed by MCCP and thus fail to state a claim for

14  intentional interference with the Agreement.

15     Separately, plaintiffs allege MCCP interfered with its "potential customers" by telling third

16  parties in Europe, Russia and Africa that plaintiffs did not have any rights to the EcoRoads name

17  and then, after being told plaintiffs registered for rights to use the name, continuing to use the

18  name in those countries.  Yet, merely referring to customers in general is not sufficient to show a

19  specific prospective business relationship.  *See, e.g., Sybersound Records, Inc. v. UAV Corp*., 517

20  F.3d 1137, 1151 (9th Cir. 2008) ("[Plaintiff] merely states in a conclusory manner that it 'has been

21  harmed because its ongoing business and economic relationships with customers have been

22  disrupted ... [but] ... does not allege, for example, that it lost a contract nor that a negotiation with

23  a Customer failed."); *Oracle Am., Inc. v. CedarCrestone, Inc*., No. 12-cv-04626 NC, 2013 WL

24  3243885, at *3–4 (N.D. Cal. June 26, 2013) ("Without an existing relationship with an identifiable

25  buyer, the expectation of a future sale is 'at most a hope for an economic relationship and a desire

26  for future benefit.'").  Without alleging the existence of a specific business relationship, plaintiffs

27

28

United States District Court
Northern District of California

ORDER RE: MOTION FOR DEFAULT JUDGMENT
CASE NO. 15-cv-02993-RS

10

1  fail to state a claim for intentional interference with prospective economic advantage.

2  Accordingly, judgment will not enter in plaintiffs' favor on that claim.

3         7. *Fraudulent Conveyance*.

4       Plaintiffs' final claim is brought under the California Uniform Voidable Transactions Act

5  ("UVTA"), California Civil Code § 3439, *et seq.*  The UVTA "permits defrauded creditors to

6  reach property in the hands of a transferee."  *Fid. Nat. Title Ins. Co. v. Schroeder*, 179 Cal. App.

7  4th 834, 840–41 (2009).  Under the UVTA, a transfer is fraudulent if the debtor made the transfer

8  or incurred the obligation (i) with actual intent to hinder, delay, or defraud any creditor of the

9  debtor, or (ii) without receiving a reasonably equivalent value in exchange for the transfer, and the

10  debtor either: (a)  was engaged in a transaction for which the remaining assets of the debtor were

11  unreasonably small in relation to the business or transaction, or (b) intended to incur debts beyond

12  its ability to pay.  *See* Cal Civ. Code § 3439.04(a).  In determining actual intent, courts consider

13  whether the transfer was to an insider, whether the debtor retained control of the property

14  transferred after the transfer, whether the transfer was of substantially all the debtor's assets,

15  whether the value of the consideration received by the debtor was reasonably equivalent to the

16  value of the asset transferred, whether the debtor became insolvent shortly after the transfer was

17  made, whether the transfer occurred shortly before or shortly after a substantial debt was incurred,

18  and whether the debtor transferred the essential assets of the business to a lienholder who

19  transferred the assets to an insider of the debtor.  *See id.* § 3439.04(b).

20       Here, plaintiffs allege that, after the Agreement was executed and they had paid money to

21  Terrafusion, Terrafusion sold the Assets to MCCP.  They further allege that, while MCCP

22  supposedly agreed to pay off Terrafusion's debts, it had no intention of doing so and instead

23  intended to pay Terrafusion's investors a percentage of its profits, thereby circumventing creditors.

24  Plaintiffs also claim Terrafusion did not receive reasonably equivalent value for the Assets,

25  leaving Terrafusion insolvent once the transfer was made, and that MCCP received confidential

26  information from the Terrafusion board of directors.  These allegations suffice to state a claim of

27  fraudulent conveyance and judgment will enter in plaintiffs' favor on that claim.

28

United States District Court
Northern District of California

**B. Remedies**

Because default judgment is warranted, appropriate damages must be assessed.  Plaintiffs have the burden of "proving up" their damages.  *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F.Supp.2d 1222, 1226 (N.D. Cal. 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit.").  Plaintiffs request: (i) a declaration that they are entitled to all the rights and benefits of the Agreement; and (ii) an award of $347,719.13 in attorney's fees and costs.  Both requests are problematic.

1. *Specific Performance*

To obtain an order of specific performance, a plaintiff must plead facts showing: (1) that a valid contract exists, (2) that the party seeking specific performance was ready, willing, and able to perform his or her contractual obligations, and (3) that the "balance of equities" tips in favor of specific performance.  *Estate of Osborn ex rel. Osborn v. Kemp*, 2009 WL 2586783, at *4 (Del. Ch. Aug. 20, 2009), *aff'd sub nom. Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153 (Del. 2010). "[T]he party requesting specific performance generally must have substantially performed its obligations under the agreement at issue."  *Millien v. Popescu*, No. CIV.A. 8670-VCN, 2014 WL 463739, at *12 (Del. Ch. Jan. 31, 2014).  Even where a contract breach involving unique goods is admitted, "there is no 'entitlement' to specific performance."  *Morabito v. Harris*, No. CIV.A. 1463-K, 2002 WL 550117, at *3 (Del. Ch. Mar. 26, 2002).  Specific performance is "considered extraordinary"; it is awarded on a discretionary basis when it is equitable.  *Id.*

As discussed above, plaintiffs fail to allege that they were ready, willing, and able to perform their contractual obligations.  While they claim defendants prevented them from paying the full cash consideration, it appears defendants did so *after* plaintiffs decided to pay only $70,000 of the $300,000 due under the Agreement.  Plaintiffs' claim that defendants misrepresented their title to the Assets supports rescission of the Agreement, not enforcement of it. Even after being ordered to submit supplemental briefing on this topic, plaintiffs fail to identify

United States District Court
Northern District of California

1  any legal authority establishing that specific performance is appropriate here.[5]  Plaintiffs note that

2  the Agreement includes a "Specific Performance" provision, which states that "there will be no

3  adequate remedy at law for a violation of any of the covenants or agreements."  Agreement § 6.5.

4  Yet, as explained above, plaintiffs have not adequately alleged a contractual violation by

5  Terrafusion.  Accordingly, specific performance of the Agreement is inappropriate.

6         2. *Attorney's Fees*

7         Prevailing parties in federal court are not ordinarily entitled to attorney's fees unless

8  authorized by statute or contract.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S.

9  240, 257 (1975).  Plaintiffs contend they are entitled to attorney's fees under the Agreement, but

10  they concede the Agreement does not include an attorney's fees provision.  Instead, plaintiffs point

11  to a provision holding the seller liable for any loss suffered by the buyer.  *See* Agreement § 6.12

12  ("The Seller will be held liable for any loss suffered, incurred or paid by the Buyer, by reason of,

13  in whole or in part, (i) any misrepresentation or inaccuracy in, or breach of, any representation or

14  warranty made by the Seller in this Agreement...").  That provision clearly relates to damages.

15  Had the parties intended to provide for attorney's fees for the prevailing party, they could have

16  included an attorney's fees provision in the Agreement.  They did not.  Even after the request for

17  supplemental briefing, plaintiffs fail to cite any authority for the proposition that the Agreement's

18  damages provision encompasses attorney's fees.

19         Alternatively, Plaintiffs claim they are entitled to attorney's fees under California Code of

20  Civil Procedure § 1021.5.  That section provides that a court may award attorneys' fees to a

21  successful party in any action which has resulted in the enforcement of "an important right

22  affecting the public interest" if: (1) a significant benefit has been conferred on the general public

23  or a large class of persons, (2) the necessity and financial burden of private enforcement, or of

24

25  [5] Plaintiffs point to *Datatel Solutions Inc., v. Keane Telecom Consulting, LLC*, 2016 WL 6088345
   (E.D. Cal. Mar. 31, 2016).  In that case, however, plaintiff fully performed all of its obligations
26  under the contract, except those which were delayed or excused by defendants' failure to perform.
   There, the parties conducted business under the contract for six years before defendant
27  discontinued its operations.

28

1   enforcement by one public entity against another public entity, are such as to make the award

2   appropriate, and (3) such fees should not in the interest of justice be paid out of the recovery, if

3   any.  This case involves a private dispute, not an important right affecting the public interest.  As

4   such, section 1021.5 is inapplicable.  Plaintiffs are not entitled to attorney's fees.

5           3.  *Damages*

6           For the reasons stated above, restitution is the appropriate remedy in this case.  In the SAC,

7   plaintiffs allege they paid $70,000 as partial performance of the Agreement and spent not less than

8   $250,000 on promotion of the Assets they were entitled to purchase under the Agreement.  They

9   have not, however, provided any proof of such damages through written affidavit or otherwise.

10  Because the $70,000 payment appears uncontested (*see* Dkt. No. 6 at ¶¶ 20, 26), restitution in that

11  amount is appropriate.  However, plaintiffs have failed to show that additional restitution in the

12  amount of $250,000 is appropriate.  Under California law, "[a]n individual is required to make

13  restitution if he or she is unjustly enriched at the expense of another."  *First Nationwide Savings v.*

14  *Perry*, 11 Cal.App.4th 1657, 1662 (1992).  "A person is enriched if the person receives a benefit at

15  another's expense."  *Id.*  Plaintiffs have offered not one scintilla of evidence showing that

16  defendants have benefitted from plaintiffs' promotional efforts.  Moreover, they have offered no

17  proof of their expenditures on promotional efforts.  Finally, in light of their failure to show that

18  plaintiffs themselves did not initially breach the Agreement, they have not shown the benefits

19  flowing to defendants from the recession of the Agreement, if any, are actually unjust.  As noted

20  above, plaintiffs have the burden of "proving up" their damages and they have failed to *prove up*

21  any unjust enrichment based on their promotional efforts.

22  **C. Counterclaims**

23          Plaintiffs contend that defendants' counterclaims should be dismissed for lack of

24  prosecution.  As mentioned above, the February 14, 2017 order had the effect of striking

25  defendants' answer.  In any event, dismissal of the counterclaims is proper.

26          Federal Rule of Civil Procedure 41(b) permits the involuntary dismissal of a case if the

27  plaintiff fails to prosecute.  The district court has the inherent power to dismiss a case *sua sponte*

28

United States District Court
Northern District of California

ORDER RE: MOTION FOR DEFAULT JUDGMENT
CASE NO.  15-cv-02993-RS

14

for lack of prosecution. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). "A dismissal for lack of prosecution must be supported by a showing of unreasonable delay." *Id*. In addition, before imposing dismissal as a sanction, the district court must consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives. *See id.*

Here, counsel for defendants moved to withdraw in November 2016. Since then, and in spite of repeated admonitions that, as a corporation, defendants must retain an attorney, they have failed to do so, now more than six months later and nearly five years after this lawsuit was filed. Defendants, either unwilling or unable to find representation to proceed, have therefore unreasonably delayed this litigation.

In addition, the factors identified above weigh in favor of dismissal. First, defendants have not retained counsel, nor have they indicated whether they can, or will, do so in a timely fashion, which contravenes the public's interest in the expeditious resolution of litigation. Second, defendants' conduct has directly interfered with the management of this case. Their ability to continue litigating their counterclaims has been called into question since they have not yet retained counsel or provided any clarity as to when they might do so. Third, as noted above, requiring this case to proceed would prejudice plaintiffs. A court may presume prejudice where a corporation does not heed its duty of due diligence to move a case forward by failing to obtain counsel. *See Brite Smart Corp. v. Google, Inc*., No. 5:15-CV-03962-BLF, 2016 WL 1070667, at *3 (N.D. Cal. Mar. 18, 2016). The fourth factor does not favor dismissal, but the fifth factor does. The only alternative to dismissal would be to grant defendants more time to find a lawyer, but they have already had ample time to do so. Dismissal of defendants' counterclaims is thus warranted.

## V.  CONCLUSION

Plaintiffs' motion for entry of default judgment is granted in part and denied in part as set forth above. A separate judgment will enter.

1    **IT IS SO ORDERED**.

2

3    Dated: May 31, 2017

4    _____

5    RICHARD SEEBORG
     United States District Judge

United States District Court
Northern District of California